UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PARADISE HOGAN, on behalf of himself and all other similarly situated, Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | Civil No. 17-10024-LTS |
| SPAR GROUP, INC. and SPAR BUSINESS SERVICES, INC., Defendants. | ) ) ) ) ) | |

ORDER ON MOTION TO COMPEL ARBITRATION

March 12, 2018

SOROKIN, J.

Plaintiff Paradise Hogan filed a First Amended Class Action Complaint (the "Complaint") in May 2017 alleging violations of the Massachusetts Wage Act, G.L. c. 149 §§ 148, 150, and the Massachusetts Independent Contractor Law, G.L. c. 149 § 148B, against Defendants SPAR Group, Inc. ("SPAR") and SPAR Business Services, Inc. ("SBS"). Doc. No. 30. Defendants, citing the Independent Contractor Master Agreement (the "Agreement") between Hogan and SBS, move to dismiss or stay this action and to compel Hogan to submit his claims to arbitration on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. In the alternative, Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court DENIES the motion to compel arbitration, ALLOWS in part and DENIES in part the motion to stay this action, and DENIES the motion to dismiss pursuant to Rule 12(b)(6).

I.     BACKGROUND

The Court recites facts alleged in the Complaint, Doc. No. 30, which the Court accepts as true for purposes of considering Defendants' motion to dismiss.

Starting in or about May 2015, Hogan served as a "Field Specialist" for SBS, a retailer services staffing company that provides personnel to various companies—including SBS's affiliate, SPAR—which in turn provide various services for retailer clients. Id. ¶¶ 9, 33. SBS provides substantially all of its Field Specialists to perform services to SPAR and classifies these Field Specialists as independent contractors. Id. ¶¶ 12-13. Field Specialists work on merchandising and assembly projects for SPAR's retailer clients on an as-needed basis. Id. ¶ 15. Neither SBS nor SPAR reimburses Hogan or other Field Specialists for costs or expenses incurred in their performance of assignments for SPAR. Id. ¶¶ 27-32.

Prior to commencing work as a Field Specialist, Hogan signed the Agreement.[1] SBS drafted the Agreement and required all Field Specialists to sign it. Id. ¶¶ 36-39. The Agreement contains no reference to the entity SPAR. Paragraph 20 of the Agreement requires parties to the Agreement to resolve disputes in arbitration:

> Any dispute between the Parties relating to this Master Agreement or otherwise arising out of their relationship under its terms, including but not limited to any disputes over rights provided by federal, state, or local statutes, regulations, ordinances, and/or common law, shall be determined by arbitration. That arbitration shall proceed before one arbitrator form [sic] the American Arbitration Association ("AAA") under the AAA Commercial Arbitration Rules then in effect for a domestic commercial dispute, accessible at: http://www.adr.org. The Parties acknowledge the Master Agreement evidences a transaction involving interstate commerce, and the arbitration shall be governed by the United States Federal Arbitration Act (9 U.S.C., Sections 1-16) ("FAA").

---

[1] The Court ALLOWS Defendants' unopposed Request for Judicial Notice (Doc. No. 33) and, in considering the pending motions, takes judicial notice of the Agreement and the AAA Commercial Arbitration Rules referred to therein, as "documents sufficiently referred to in the complaint[.]" Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc., 778 F.3d 228, 232 n.2 (1st Cir. 2015).

2

Doc. No. 33-1 § 20.  The arbitration clause also prohibits a party from bringing claims in a class action:

> The Parties agree that any claim shall be brought solely in the individual capacity of SBS or the Independent Contractor, and not as a representative of any other persons or any class.

Id.

Hogan alleges that SBS and SPAR misclassify him and other Field Specialists as independent contractors rather than employees, such that SBS and SPAR avoid paying Wage Act-mandated expenses in relation to Hogan and other Field Specialists and compensate Hogan and other Field Specialists in an amount below the hourly minimum wage.

II. DISCUSSION

The FAA provides that contracts that include written provision to resolve disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the FAA, a court, upon determining that an action is subject to an enforceable arbitration agreement, "shall […] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," id. § 3, and "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" if a party has failed to comply with the agreement, id. § 4.

A. Motion to Compel Arbitration against SBS

First, Defendants assert that the arbitration provision is "undoubtedly valid and enforceable as to SBS," such that Hogan must resolve his claims against SBS in arbitration.

3

Doc. No. 32 at 6.  "A party who attempts to compel arbitration must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope."  InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

Hogan argues that enforcement of the arbitration clause would violate Section 7 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, which protects employees' right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]"  Doc. No. 35 at 2-7.  Section 8 of the NLRA makes it an "unfair labor practice for an employer [] to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7.]"  29 U.S.C. § 158(a)(1).

The issue of whether the NLRA prohibits arbitration agreements that preclude employees from pursuing class remedies in litigation is currently before the Supreme Court in Lewis v. Epic Systems Corp., 823 F.3d 1147 (7th Cir. 2016), cert. granted, 137 S.Ct. 809 (2017).  The Supreme Court heard arguments on October 2, 2017 and to date has not issued a ruling.  At a November 13, 2017 status conference, the parties to this litigation assented to this Court's staying of litigation of Hogan's claims against SBS, which Hogan does not contest would be subject to arbitration should his NLRA-based challenge fail.

In light of the Supreme Court's consideration of a legal question significant to this case, as well as the parties' positions, the Court DENIES without prejudice Defendants' motion to compel arbitration of the claims against SBS and ALLOWS Defendants' motion to stay litigation of those claims.  The parties shall submit a status report on these claims within 14 days of the Supreme Court's ruling.

B.     Motion to Compel Arbitration against SPAR

Defendants next urge that SPAR is "undoubtedly an intended third-party beneficiary" of the Agreement, such that SPAR also may compel Hogan to submit his dispute with SPAR to arbitration. Doc. No. 31 at 2. Absent any contention from Hogan to the contrary, the Court looks to federal common law in evaluating whether a non-signatory can invoke an arbitration provision in a contract executed solely by others. InterGen, 344 F.3d at 143-144. Under federal law, a non-signatory must show with "special clarity that the contracting parties intended to confer a benefit" on the non-signatory. McCarthy v. Azure, 22 F.3d 351, 362 (1st Cir. 1994).

The Court finds nothing in the Agreement indicating that the parties intended for SPAR to enjoy rights under it. Defendants cite the wording of the allegations in the Complaint (e.g., "employment with SBS and SPAR" and "perform services for SPAR") to suggest that SPAR and SBS equally may invoke the Agreement's arbitration clause. However, Defendants point to neither language in the Agreement itself nor circumstances of its execution that suggest that the parties to the Agreement understood SPAR to be a third-party beneficiary. See McCarthy, 22 F.3d at 358-59 (declining to "widen the arbitration clause to include the signatories' agents and employees" and citing unwillingness by courts to read unwritten terms into agreements). Had SBS intended to make SPAR a third-party beneficiary under the Agreement, SBS easily could have done so.

Nonetheless, Defendants also assert that equitable estoppel should preclude Hogan from advancing claims against SPAR outside of arbitration and thereby "enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." Doc. No. 32 at 8 (citing Sourcing Unlimited, Inc. v. ASIMCO Int'l, Inc., 526 F.3d 38, 47 (1st Cir. 2008)). "Federal courts have been willing to estop a signatory from avoiding arbitration with a

5

nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Sourcing Unlimited, 526 F.3d at 47. In Sourcing Unlimited, the First Circuit found the plaintiff estopped from avoiding an arbitration clause because all of the plaintiff's claims against the nonsignatory defendant "ultimately derive[d] from benefits" that the plaintiff alleged were due to it under the agreement containing the arbitration clause. Id. at 47-48.

The Court finds equitable estoppel inapposite here. Hogan brings identical claims against SBS and SPAR under Massachusetts statutory provisions governing employer responsibilities with respect to employees (M.G.L. c. 149 § 148), the classification of an individual as an employee or independent contractor (M.G.L. c. 149 § 148B), and private actions for unpaid wages or other benefits (M.G.L. c. 149 § 150). Doc. No. 30 at 7-9. While the Agreement disclaims the creation of an employer-employee relationship,[2] the existence of such a relationship hinges not on any characterization in the Agreement, but rather on the nature of the services performed. Cf. M.G.L. c. 149 § 148B (specifying types of services considered to be not those performed by an employee and noting that an employer's failure to make withholdings or payments that would be required for an employee "shall not be considered in making a determination" as to a person's employee status). Hogan does not claim that SPAR owes him benefits arising from the Agreement, which speaks only to compensation that SBS and Hogan negotiate separately. Doc. No. 33-1 ¶ 7. Rather, Hogan seeks benefits mandated by

---

[2] Paragraph 1 of the Agreement provides: "Independent Contractor"—i.e., Hogan Paradise—"and SBS understand and acknowledge that this Master Agreement **DOES NOT CREATE ANY EMPLOYER/EMPLOYEE RELATIONSHIP** between them. Independent Contractor is an independently established businessperson or company, that will have the opportunity to accept merchandising-related contracts/jobs ('Contract') **SOLELY AS A SELF-EMPLOYED, INDEPENDENT CONTRACTOR** at locations outside of SBS' places of business under such conditions as are negotiated and accepted by Independent Contractor in its sole discretion." Doc. No. 33-1 ¶ 1. The Agreement also provides that SBS will withhold no amounts from the compensation paid to Hogan and that Hogan will be responsible for maintaining general liability and worker's compensation insurance. Id. at ¶¶ 7 and 10. Finally, the Agreement specifies Hogan's responsibilities as an independent contractor in Paragraph 14.

Massachusetts law outside of any agreement for services. Thus, the alleged violations are not sufficiently intertwined with the Agreement for equitable estoppel to apply.

Accordingly, the Court DENIES Defendants' motion to compel arbitration as to Hogan's claims against SPAR. Further, while litigation of the claims against SPAR undoubtedly will involve questions of fact common to the claims against SBS, the Court discerns no reason to stay litigation between Hogan and SPAR until the completion of any potential arbitration between Hogan and SBS. The Court therefore DENIES Defendants' motion to stay litigation of the claims against SPAR.

### C. Motion to Dismiss Pursuant to Rule 12(b)(6)

Finally, Defendants contend that, while Hogan brings claims under M.G.L. c. 149, "he does not make a single factual allegation that Defendants failed to pay him in accordance with this statute." Doc. No. 32 at 2. The Court disagrees. Rather, the Complaint alleges that Defendants classify Field Specialists as independent contractors, Doc. No. 30 ¶¶ 13, 24, and 34; that a Field Specialist's engagement with Defendants bears qualities that establish an employment relationship,[3] id. ¶¶ 14-23; that, in the course of their engagement, Field Specialists are required to incur costs and expenses that Defendants do not reimburse, id. ¶¶ 27-32; and that the effect of misclassifying Field Specialists as independent contractors and not reimbursing their costs and expenses is that Field Specialists "effectively earn an hourly wage that [is] less than minimum wage", id. ¶¶ 42-43. These allegations "contain sufficient factual matter, accepted as

---

[3] The Complaint is replete with allegations that Field Specialists are not "free from control and direction in connection with the performance" of their services; that Field Specialists do not perform services "outside the usual course of the business of the employer"; and that Field Specialists are not individually "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed," for purposes of being an independent contractor under M.G.L. c. 149 § 148B.

7

true, to state a claim to relief that is plausible on its face[,]" Bruns v. Mayhew, 750 F.3d 61, 71 (1st Cir. 2014)—namely, that Hogan and similarly situated Field Specialists, by virtue of being employees misclassified as independent contractors, (1) have earned wages[4] that Defendants have not paid and/or (2) have incurred costs[5] that Defendants by law may not exempt themselves from paying through "special contracts" or otherwise, see, e.g., Martins v. 3PD Inc., 2014 WL 1271761 (D. Mass. Mar. 27, 2014) (finding that agreement under which misclassified employees bore ordinary business costs entirely was a "special contract" in violation of § 148). Either of these theories, if proven, would establish a violation of M.G.L. c. 149 § 148, which could serve as a predicate for Hogan's claim under § 150. The Court thus DENIES Defendants' motion to dismiss Hogan's claims on Rule 12(b)(6) grounds.

III. CONCLUSION

For the foregoing reasons, the Court STAYS litigation of Hogan's claims against SBS, but DENIES Defendants' motion to stay or compel arbitration of Hogan's claims against SPAR. Further, Defendants' motion to dismiss Hogan's claims is DENIED. The parties shall submit a status report within 14 days of this Order.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[4] As Hogan notes, "[t]he word 'earn' is not statutorily defined, but its plain and ordinary meaning is 'to acquire by labor, service, or performance,' or 'to do something that entitles one to a reward or result whether it is received or not'" such that "[w]here an employee has completed the labor, service, or performance required of him [...] he has 'earned' his wage." Awuah v. Coverall North America, Inc., 460 Mass. 484, 896 (2011) (internal citations omitted).

[5] Defendants insist that the Complaint fails to allege that Hogan personally incurred damages as a result of Defendants' alleged actions. See, e.g., Doc. No. 39 at 8-9. The Court rejects Defendants' reading of the Complaint, which sufficiently alleges costs and expenses leading to lost wages incurred by Defendants' Field Specialists, which necessarily includes Hogan under the Complaint's allegations.